Compensation Appeals Board
Nos. 2010-233
      2010-234

APPEAL OF THE HARTFORD INSURANCE COMPANY
(New Hampshire Compensation Appeals Board)

Argued: February 17, 2011
Opinion Issued: May 26, 2011

*Sulloway & Hollis, P.L.L.C.*, of Concord (*James Owers* and *Timothy A. Gudas* on the brief, and *Mr. Owers* orally), for the petitioner.

*Michael A. Delaney*, attorney general (*Evan J. Mulholland*, assistant attorney general, on the brief and orally), for the State.

HICKS, J. The petitioner in these consolidated cases, The Hartford Insurance Company (Hartford), appeals orders of the Compensation Appeals Board (CAB) denying recovery from the State Special Fund for Second Injuries, *see* RSA 281-A:54, :55 (2010), for injuries to Claire Hamel and John Rygiel. We vacate and remand.

The following facts were found by the CAB or are supported in the record. Hamel was employed by EAD Motors or its predecessor from 1973 through July 17, 2006. Her job involved small motor subassembly and assembly.

In 1995, Hamel was temporarily disabled for psychiatric reasons and was diagnosed with bipolar disorder. EAD Motors continued to employ her with notice of her disability. In 2005, EAD was notified that Hamel could not use a respirator because of her severe claustrophobia.

Hamel continued to work for EAD until July 17, 2006, the date of her second injury. The second injury fund certification by her attending physician listed her diagnosis as "[c]ervical degenerative disc disease and left cubital tunnel syndrome."

The New Hampshire Department of Labor (DOL) denied Hartford's request, as the employer's insurance carrier, for second injury reimbursement in July 2009. On *de novo* appeal of that decision, the CAB also denied reimbursement from the fund.

Rygiel began employment with Mobilemed Support Services, LLC (Mobilemed) in 1994. His job involved driving a large truck to transport a mobile MRI unit, setting up the unit and breaking it down. Since 1994, Rygiel has had Type II diabetes requiring the use of medication. As part of a commercial vehicle driver examination in 2001, it was noted that Rygiel had liver disease. On March 5, 2003, Rygiel had the fifth toe on his right foot amputated due to a burn from a heating pad. According to his doctor, Rygiel could not feel the heating pad as a result of his diabetic neuropathy. Following the amputation of Rygiel's toe, Mobilemed obtained legal advice prior to his return to work.

On December 11, 2006, Rygiel sustained an employment-related injury to his wrist. On July 14, 2009, the DOL denied Hartford's request, as the employer's insurance carrier, for reimbursement from the second injury fund. A *de novo* appeal to the CAB also resulted in the denial of second injury fund reimbursement.

■ Hartford appeals both the Hamel and Rygiel decisions by the CAB. Our standard of review is established by statute. *Appeal of Jenks*, 158 N.H. 174, 177 (2008).

> [A]ll findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable;

and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007). Accordingly, our review of the CAB's factual findings is deferential. *Jenks*, 158 N.H. at 177. We review its interpretations of statutes, however, *de novo. Id.*

> On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. . . . We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. We construe liberally the Workers' Compensation Law in order to give the broadest reasonable effect to its remedial purpose. Thus, when construing the statute, we resolve all reasonable doubts in favor of the injured worker.

*Appeal of Gamas*, 158 N.H. 646, 648 (2009) (citations omitted).

■ "The second injury fund was created to encourage employers to hire or retain employees with permanent physical or mental impairments of any origin by reducing the employer's liability for workers' compensation claims." *Appeal of CNA Ins. Cos.*, 143 N.H. 270, 272-73 (1998). The statutes at issue here are RSA 281-A:54 and RSA 281-A:2, XIV (2010). RSA 281-A:54, I, provides:

> If an employee who has a permanent physical or mental impairment, as defined in RSA 281-A:2, XIV, from any cause or origin incurs a subsequent disability by injury arising out of and in the course of such employee's employment on or after July 1, 1975, which results in compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or the employer's insurance carrier shall in the first instance pay all awards of compensation provided by this chapter. However, the commissioner shall reimburse such employer or insurance carrier from the special fund created by RSA 281-A:55 for all compensation payments subsequent to those payable for the first 104 weeks of disability. Provided, however, that prior to the first 104 weeks of disability, the employer shall be reimbursed 50 percent after the first $10,000 paid on all compensation for temporary total, temporary

partial, permanent partial, permanent total, medical, or rehabilitation benefits for all injuries occurring on or after January 1, 1991.

RSA 281-A:2, XIV, in turn, defines "[p]ermanent physical or mental impairment," for purposes of RSA 281-A:54, to mean "any permanent condition that is congenital or due to injury or disease and that is of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed."

The State first contends that *de novo* review is inappropriate here because the CAB "made factual findings regarding the gravity, in an employability context, of Hamel's and Rygiel's permanent conditions" and "then found that neither condition was so serious as to 'constitute a hindrance or obstacle to obtaining employment' should Hamel or Rygiel become unemployed." (Quoting RSA 281-A:2, XIV.) The State argues that these determinations required the CAB to undertake "only a factual analysis of the evidence before it, not a legal analysis of which law applied," and that *de novo* review is therefore not warranted. We disagree. Implicit in the CAB's determination that neither employee's condition was serious enough to be a "hindrance or obstacle to obtaining employment," RSA 281-A:2, XIV, is an interpretation of what that statutory language means. That is an issue of statutory interpretation we review *de novo*.

Hartford argues that the CAB erred in interpreting RSA 281-A:2, XIV. It contends that the determination of whether a condition satisfies the statute "requires an *objective* analysis to determine whether a prospective employer in the open labor market would likely conclude that the underlying medical condition could rise to the level of a hindrance or obstacle to employment." It then argues that the CAB, instead of conducting that analysis, "focused entirely on the ability of Hamel and Rygiel to have maintained and performed their jobs and then assumed, from their work experiences with the employers who had retained them, that they would face no obstacles or hindrances to employment if they were . . . to become unemployed."

The State counters that "Hartford has read the terms 'objectively,' and 'open labor market' into the statute," and argues that the CAB "was not required, as [Hartford] contend[s], to use solely an 'objective' test." Rather, the State contends, "[i]t was entirely within [the CAB's] prerogative to consider the abilities of Ms. Hamel and Mr. Rygiel to maintain and perform their jobs as evidence that their conditions were not so serious as to constitute a hindrance or obstacle to obtaining employment were the employees to become unemployed."

■ The issue before us, then, is whether RSA 281-A:2, XIV allows the CAB to consider an employee's past job performance as evidence that his or her preexisting impairment would not be a hindrance or obstacle to obtaining employment should the employee become unemployed. "Our goal is to apply statutes in light of the legislature's intent in enacting them, and in light of the policy sought to be advanced by the entire statutory scheme." *Goudreault v. Kleeman*, 158 N.H. 236, 253 (2009) (quotation omitted).

This case presents an issue of first impression in this jurisdiction. We find instructive two decisions of the Court of Appeals of Arizona addressing whether the hindrance or obstacle to reemployment test under that state's statute is objective, in the sense of looking to the nature of the employee's preexisting condition, or subjective, in the sense of looking to the particular employee's ability to engage in employment. *Special Fund Div. v. Indus. Com'n of Ariz.*, 897 P.2d 643, 647-48 (Ariz. Ct. App. 1994); *Country Wide Truck v. Indus. Com'n*, 891 P.2d 877, 878 (Ariz. Ct. App. 1994). Both decisions ruled that the test was an objective one. *Special Fund Div.*, 897 P.2d at 648; *Country Wide Truck*, 891 P.2d at 878-79. The court in *Country Wide Truck* explained:

> [I]t does not follow that one who is able to retain his current employment will be able,. in the event he were to become unemployed, and if a subsequent employer were informed of his impairment, to obtain reemployment. Moreover, to view each case subjectively would be to defeat the statutory purpose. By hiring, an employer would demonstrate that the preexisting medical condition was not a hindrance to employment and thus would lose the right to claim [reimbursement from the second injury fund]. Only by denying employment could an employer establish hindrance but then not having employed the individual, no claim to [reimbursement] could be made. We think the inquiry should be whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee.

*Country Wide Truck*, 891 P.2d at 879.

The State discounts the applicability of *County Wide Truck's* reasoning to this case, arguing that "Arizona's Second Injury Fund statute is robust and specific" in that it contains a schedule of conditions that qualify as preexisting impairments. *See Country Wide Truck*, 891 P.2d at 878; *Special Fund Div.*, 897 P.2d at 647 (noting that one requirement for reimbursement from second injury fund under the applicable statute is that the employee have "a nonindustrial preexisting physical impairment due to one of the statute's enumerated conditions"). By contrast, the State argues, "the New

Hampshire legislature did not provide the [CAB] with a specific schedule of conditions . . . [which] suggests that it is up to the [CAB] to make factual determinations, based on the evidence made available to it."

We acknowledge that the Arizona statute differs from ours; nevertheless, the specific statutory requirement addressed in the portions of *Country Wide Truck* and *Special Fund Division* that we find relevant, namely, that the preexisting "impairment constitutes a hindrance or obstacle to employment or reemployment," *Special Fund Div.*, 897 P.2d at 647, is substantially similar to the statutory requirement at issue here. That the *Country Wide Truck* court may have found the statutory schedule of conditions to be additional support for its interpretation of the statute, *see Country Wide Truck*, 891 P.2d at 879, does not detract from the persuasiveness of its above-quoted reasoning.

We also note that some courts examining the issue of a prospective employer's reluctance to hire an employee with a preexisting condition recognize an economic disincentive to hiring an employee who may expose the employer to increased liability, regardless of whether the employee can perform the job. *See, e.g., Unit Wall Company v. Speh*, 133 So. 2d 304, 307 (Fla. 1961). Thus, the court in *Unit Wall Company* noted that if the employer of an employee with a preexisting condition, "on injury to the employee, may be required to compensate him for treatment or disability far greater than would be the case if the employee had not been afflicted" with the condition, the condition may be classified as one that "is or is likely to be a hindrance or obstacle to employment." *Unit Wall Company*, 133 So. 2d at 307 (quotation omitted).

■ We agree with the reasoning of these cases and conclude that the employee's ability to perform his or her existing job, or one like it, is not determinative of whether the preexisting impairment is "a hindrance or obstacle to obtaining employment," RSA 281-A:2, XIV. As the New York Supreme Court, Appellate Division stated:

> The question is not whether the impairment is one which would prevent the claimant from doing his work in a normal and acceptable manner but whether the impairment is one which is likely to be an adverse factor in the claimant's being employed or being retained in employment. Many handicapped persons are, in fact, able to do their work as well as those free from handicap but there may be a greater risk of injury to them or there may be a risk that, in the event of injury, their total permanent disability will be greater than the disability which would have resulted from the subsequent injury alone. For these and related reasons,

employers may be reluctant to employ such persons; the Second Injury Law was designed to overcome this reluctance.

*Nagorka v. Goldstein*, 167 N.Y.S.2d 118, 119-20 (App. Div. 1957).

Examination of the CAB's decisions in these consolidated cases reveals that the CAB's findings that neither Hamel's nor Rygiel's prior conditions constituted a hindrance or obstacle to employment were based upon their abilities to perform their most recent jobs. With regard to Hamel, the CAB found:

> If an employer were looking for someone to do the same type of factory job, Ms. Hamel's work record over 33 years at EAD certainly would be considered exemplary. Her bi-polar disorder certainly was not a problem; nor was accommodation ever necessary for Ms. Hamel's particular disorder . . . .

> It is found that Ms. Hamel's bi-polar disorder, although a permanent condition, did not constitute a hindrance or obstacle to regaining employment. Her work record at EAD was exemplary and she would be well-qualified to be employed in the same type of job or retained by EAD had she not been injured.

With regard to Rygiel, the CAB found:

> There is no evidence that Mr. Rygiel's Type II diabetes impeded his work in any fashion. There was no accommodation necessary for his continued employment. Type II diabetes is not considered by the [Department of Transportation] as an impediment to obtaining a [commercial driver's license] (as distinguished from diabetes treated with insulin which requires an exemption) and Mr. Rygiel passed his [Department of Transportation] physicals every two years after the diagnosis was made.

> It is found that Mr. Rygiel's Type II diabetes, although a permanent condition, did not constitute a hindrance or obstacle to his regaining employment should he become unemployed.

The CAB's reliance upon the employees' abilities to perform their most recent jobs was error. We adopt the language of *Country Wide Truck* to frame the proper query: "[T]he inquiry should be whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee." *Country Wide Truck*, 891 P.2d at 879. Because the CAB did not employ the correct analysis in reaching its decisions in both

cases, we vacate and remand for further proceedings consistent with this opinion. *Cf. Appeal of CNA Ins. Co.*, 148 N.H. 317, 323 (2002) (setting forth proper inquiry to determine loss of earning capacity and remanding for further factual findings related thereto).

*Vacated and remanded.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.