Compensation Appeals Board
No. 2010-795

APPEAL OF RAYMOND LETELLIER
(New Hampshire Compensation Appeals Board)

Argued: September 22, 2011
Opinion Issued: December 15, 2011

*Richard J. Walsh, III, P.A.*, of Manchester (*Richard J. Walsh, III* on the brief and orally), for the petitioner.

*Trombley Kfoury, P.A.*, of Manchester (*Paul R. Kfoury, Jr.* on the brief and orally), for the respondents.

DUGGAN, J. The petitioner, Raymond Letellier, appeals an award of the New Hampshire Compensation Appeals Board (CAB) that granted reimbursement for medical bills and expenses, but did not grant indemnity benefits. The respondents, Steelelements, Inc. and its insurance carrier, Chartis Insurance (together, the carrier), cross-appeal arguing that the CAB erred in finding that Letellier suffered a compensable work-related injury. Because we conclude that Letellier's injury is excluded from the statutory definition of the term "injury," we affirm the denial of indemnity benefits and reverse the award for medical bills and expenses.

The CAB found, or the parties do not dispute, the following facts. Letellier was the co-founder of Steelelements, Inc., a business that produced steel materials. He also served as the manager of plant operations for the business, and oversaw sales, transportation, engineering and customer relations. In March 2007, a fire destroyed the manufacturing plant and production was temporarily relocated while the facility was rebuilt. The final cost of rebuilding the facility far exceeded budget projections, and the business floundered. The business was closed in October 2009. Letellier then filed for personal and business bankruptcy.

During the summer of 2009, before the business closed, Letellier saw a nurse at Concord Psychiatric Associates due to stress. Letellier was not

admitted, but the nurse recommended he follow up with outpatient counseling. During the ensuing months, Letellier developed hypertension and major depression, and several doctors attributed his ailments to the failure of his business, as well as other life stresses. Letellier filed a workers' compensation claim with the carrier, citing mental stress and severe depression. The carrier denied the claim.

Letellier requested a hearing before the department of labor. A hearing officer denied Letellier's claim, finding that he "failed to show that he suffered an injury which arose out of and in the course of his employment." The officer determined that Letellier was merely "the victim of an economic reality which is far outside the realm of the Workers' Compensation Statute." Letellier appealed to the CAB. The CAB found that Letellier established both medical and legal causation, and that stress and depression qualify as compensable occupational injuries within the meaning of the statute. It overturned the hearing officer's denial, and ordered the carrier to pay all medical and psychological treatment expenses associated with the claim.

The carrier filed a motion for rehearing, arguing that Letellier's alleged condition falls outside the scope of the workers' compensation statute. Letellier filed a motion for clarification of the order, requesting that the order include indemnity benefits in addition to the cost of medical expenses. The CAB denied both motions, and both parties appealed.

On appeal, Letellier argues that he should have been awarded indemnity benefits. In its cross-appeal, the carrier argues that the CAB should have denied Letellier's claim for three reasons: (1) the injury did not result from a risk created by employment; (2) the injury is excluded from the statutory definition of the term "injury"; and (3) Letellier did not prove that his employment substantially contributed to his mental injury. Because it is dispositive, we first address the argument that Letellier's injury was excluded from the statutory definition.

We will overturn the CAB's decision only for errors of law, or if we are satisfied by a clear preponderance of the evidence that the decision is unjust or unreasonable. *Appeal of Langenfeld*, 160 N.H. 85, 89 (2010); RSA 541:13 (2007). The appealing party bears the burden of demonstrating that the CAB's decision was erroneous. *Appeal of Belair*, 158 N.H. 273, 276 (2009).

An injury is compensable under the Workers' Compensation Law if it is an "accidental injury . . . or occupational disease . . . arising out of and in the course of employment . . . ." RSA 281-A:2, XI (2010). Mental injuries, including major depression caused by work-related stress, may qualify as compensable injuries. RSA 281-A:2, XI. However, the statute does not permit compensation for any "mental injury" caused by "any disciplinary

action, work evaluation, job transfer, layoff, demotion, termination, or any similar action, taken in good faith by an employer." *Id.*

Resolution of this case requires us to interpret RSA 281-A:2, XI. We are the final arbiter of the meaning of the workers' compensation statute. *Appeal of Hartford Ins. Co.*, 162 N.H. 91, 93 (2011). In interpreting a statute, we first examine the language of the statute itself, and, where possible, construe that language according to its plain and ordinary meaning. *Kenison v. Dubois*, 152 N.H. 448, 451 (2005). Whether a condition is excluded from the definition of the term "injury" is "governed by the express statutory language and that which can be fairly implied therefrom." *Rooney v. Fireman's Fund Ins. Co.*, 138 N.H. 637, 638-39 (1994) (quotation omitted). We must determine whether major depression caused by the stress of business failure comes within the statutory exclusion and thus does not constitute a compensable injury.

We begin by construing the plain meaning of the phrase "any disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or any similar action." RSA 281-A:2, XI. Layoffs, demotions, terminations, or similar actions may be precipitated by a number of factors, including poor performance, insubordination, or economic conditions. Such circumstances are explicitly excluded from the definition of the term "injury" because they are "normal and expected conditions of employment life." *Skidis v. Industrial Com'n*, 722 N.E.2d 1163, 1166 (Ill. App. Ct. 1999) (quotation omitted); *see also Kemp v. W.C.A.B. (Elkland Elec. Co.)*, 549 A.2d 1365, 1367 (Pa. Commw. Ct. 1988) ("[B]eing laid off because of modernization is, in fact, a normal working condition.").

Although a business failure is not among the specifically enumerated exclusions, the legislature made clear that the list was not exclusive by including the words "any similar action." *Garand v. Town of Exeter*, 159 N.H. 136, 141 (2009) ("The legislature is not presumed to waste words . . . and whenever possible, every word of a statute should be given effect.") (quotation omitted). We must consider the meaning of the term "any similar action" in the context of the specifically enumerated exclusions. *State v. Beauchemin*, 161 N.H. 654, 658 (2011) (explaining that where general words follow specific words in a statute, the general words are construed to embrace objects similar in nature to those enumerated by the specific words). Like the listed exclusions, the possibility of a business failure is a normal condition of employment. *See Ziv v. Industrial Com'n of Ariz.*, 773 P.2d 228, 231-32 (Ariz. Ct. App. 1989) (agreeing that business failure "is not necessarily unexpected, extraordinary, or unusual" and injury from such stress is not covered by the workers' compensation act). It, too, is often

precipitated by poor company performance or general economic conditions. A business failure is indistinguishable from the specifically enumerated exclusions. Viewing the plain meaning of the phrase "any similar action" in light of this fact compels us to conclude that the phrase encompasses a business failure.

■ Letellier argues that the exclusion does not apply in this case because the business failure was not an action taken by the employer. However, business failure necessarily implies some action by the employer; a business has not "failed" until the employer shuts the business down. Just as an employer's decision to lay off employees due to economic conditions may result in mental injury, so too an employer's choice to shut down a business due to economic conditions may result in mental injury. *See Lapare v. Industrial Com'n of Ariz.*, 742 P.2d 819, 822 (Ariz. Ct. App. 1987) ("In summary, threatened economic hardship, including such naturally traumatic events as lay offs and plant closures, may indeed set the stage for varying degrees of emotional distress. . . . Their remedy, however, does not lie with workers' compensation benefits. Other remedies . . . must be pursued.").

■ Moreover, interpreting the phrase "any similar action" not to include business failure would lead to the absurd result that employees who are laid off due to business failure, and thus are expressly excluded from the coverage for mental injury, would be precluded from receiving benefits, while the owner of the failed business would be eligible for benefits. We decline to adopt such an illogical interpretation. *Favazza v. Braley*, 160 N.H. 349, 351 (2010). We thus conclude that a business failure constitutes "any similar action" within the meaning of the statute.

Although not cited by either party, we also conclude that this case is distinguishable from our most recent interpretation of RSA 281-A:2, XI in *Petition of Dunn*, 160 N.H. 613 (2011). The petitioner in *Dunn* was the chief of police for the Town of Jaffrey. *Id.* at 614. In that capacity, he "faced a number of stressors beginning in 2004 and continuing through his final day of work in July 2006." *Id.* at 615. The stressors included: "a letter on NAACP stationery threatening to sue him"; internet attacks by the letter's author; a budget dispute with Jaffrey selectmen; staffing shortages; department in-fighting; a labor grievance against him; the conducting of an investigation of the town manager, requiring a referral to the county attorney and the United States Attorney; his own suspension and reinstatement; and an email from a Jaffrey selectman containing derogatory statements and questioning his sanity. *Id.* at 615.

■ After being terminated, the chief applied for accidental disability retirement benefits from the New Hampshire Retirement System. *Id.* at 616-17. The exclusion provision in RSA 281-A:2, XI applies to retirement benefits. *Id.* at 620-21. The hearings examiner denied the claim and "apparently made a distinction between 'work-related' and 'personnel-related' psychological injur[ies]." *Id.* at 624. On appeal, we held that RSA 281-A:2, XI "does not exclude all stress-based injury that is personnel-related." *Id.* We noted that the chief's duties specifically included personnel responsibilities, and that an injury is compensable when the exercise of such personnel-related activities, rather than a good faith personnel action taken against the employee, causes the injury. *See id.*

Here, there is no contention that Letellier's injury was caused by personnel actions comparable to those in *Dunn*. Letellier's injuries did not arise from the performance of personnel duties that were part of his job. As the CAB explained, "[T]he failure of the claimant's business caused the stress that resulted in his severe and disabling depression." Without a transcript of the CAB hearing, we assume the evidence was sufficient to support this finding. *See Atwood v. Owens*, 142 N.H. 396, 396-97 (1997). Based upon this finding, the business failure that caused the injury falls squarely within the exclusion for "any similar action" in RSA 281-A:2, XI.

■ Although we have determined that business failure comes within the statutory exclusion, the exclusion applies only to "any similar action, *taken in good faith* by an employer." RSA 281-A:2, XI (emphasis added). There is nothing to suggest that the failure of the business in this case involved bad faith. The CAB found that "the business floundered" largely due to the cost of reconstruction after a fire that caused substantial losses in 2007. It also specifically found that Letellier's depression resulted from the ultimate economic failure of his business. "The medical care providers all [agreed] on this chain of events and the insurer did not dispute it." Further, neither party alleges any bad faith on the part of Steelelements, Inc. We thus find that the failure of the business was "any similar action . . . taken in good faith by the employer." Accordingly, Letellier's depression was excluded from the statutory definition of the term "mental injury" and was not compensable.

Because of our disposition of the cross-appeal, we need not address the parties' additional arguments.

*Affirmed in part and reversed in part.*

CONBOY and LYNN, JJ., concurred; DALIANIS, C.J., with whom HICKS, J., joined, dissented.

DALIANIS, C.J., dissenting. The majority holds that the cumulative occupational stress and depression suffered by the petitioner, Raymond Letellier (claimant), constitutes a "mental injury" that is not compensable because it results from a personnel action "taken in good faith" against the claimant "by an employer." RSA 281-A:2, XI (2010). Because I disagree with this conclusion, I, respectfully, dissent.

The following facts appear in the record. The claimant, who has a history of depression, is the co-founder and former operations officer of respondent Steelelements, Inc. (Steelelements). I will refer to Steelelements and its insurer, respondent Chartis Insurance, collectively, as "the insurer."

In March 2007, a fire destroyed Steelelements's building in Gorham. In 2007 and 2008, the company rebuilt the building, but because the claimant's business partner did not establish cost controls, rebuilding costs exceeded budget projections, causing the company to "flounder[ ]." The March 2007 fire started "[a] slow decline" in the claimant's business.

The claimant first sought medical care for his work-related injuries in the summer of 2009, when he visited a psychiatric nurse practitioner. He was not hospitalized at that time, but was urged to engage in outpatient counseling. At that time, he was managing plant operations, and overseeing sales, transportation, engineering and customer relations. Because his commute was 100 miles long, he often stayed in a room at the company, where he was lonely. He developed hypertension, which the psychiatric nurse practitioner attributed to his work. She deemed him unable to work on September 8, 2009, because of depression and an inability to concentrate. Even so, he continued to work until October 9, 2009, a few days before the business closed, when he turned the keys and assets over to the company's lender. He filed for both personal and business bankruptcy. In 2010, the claimant sought psychiatric services from another provider, who attributed his stress and resulting depression to his employment.

The claimant submitted a claim for work-related injury, asserting that his injury occurred when the nurse practitioner took him out of work on September 8, 2009. The insurer denied the claim on the ground that his condition was not work-related. The claimant appealed to the department of labor, arguing that his injury was "cumulative emotional trauma, developing since the 2007 fire, the 2008 reconstruction, and the downhill slide of the company's business position." A department of labor hearing officer agreed with the insurer, finding that the claimant's condition was caused by "an economic reality . . . far outside the realm of the Workers' Compensation Statute." The claimant then appealed to the CAB, which reversed the hearing officer's decision.

The CAB found that the claimant demonstrated that his work caused his "disabling major depression" as a medical fact because all of the providers

agreed that it was caused by "cumulative occupational stress," which, in turn, was caused by "the failure of [his] . . . business." The CAB found that the claimant satisfied his burden of establishing legal causation by demonstrating that "[j]ob stress" was "the substantial contributing factor" to his depression, and that the stress from his job "posed a greater risk than encountered outside of work." *See Appeal of Margeson*, 162 N.H. 273, 280, 285 (2011).

Our standard of review is statutory:

> [A]ll findings of the [CAB] upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007). Thus, we review the CAB's factual findings deferentially. *Appeal of Hartford Ins. Co.*, 162 N.H. 91, 93 (2011). We review its statutory interpretation *de novo. Id.*

Our review of the CAB's factual findings in this case is especially deferential because neither the claimant nor the insurer has provided us with a copy of the hearing transcript. *See* SUP. CT. R. 10(2) (in appeal brought pursuant to RSA chapter 541 unless moving party requests transcript to be prepared, no transcript will be prepared for inclusion in record). Absent a transcript, we must assume that the evidence supports the CAB's factual findings. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004); *see also* SUP. CT. R. 10(2).

The nature and extent of compensation is governed by the express statutory language and that which can be fairly implied therefrom. *Appeal of Gamas*, 158 N.H. 646, 648 (2009). On questions of statutory interpretation, we are the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole. *Id.* We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include. *Id.* We construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose. *Id.* Thus, when construing it, we resolve all reasonable doubts in favor of the injured worker. *Id.*

RSA 281-A:2, XI defines an "injury" for the purposes of the Workers' Compensation Law as an "accidental injury or death arising out of and in the course of employment." This part of the definition of the word "injury" is not at issue in this appeal. Rather, this appeal concerns a statutory exclusion, which provides that "a mental injury" is not an "injury" for the

purposes of the Workers' Compensation Law "if it results from any disciplinary action, work evaluation, job transfer, layoff, demotion, termination, or any similar action, taken in good faith by an employer." RSA 281-A:2, XI.

Here, the CAB did not find that the claimant's occupational stress and resulting depression were due to *any action* taken in good faith by the employer. The CAB found *only* that "the failure of the claimant's business caused the stress that resulted in his severe and disabling depression."

The plain language of the statutory provision at issue does not bar recovery for a mental injury, here, cumulative occupational stress and depression, caused by the failure of a business. Rather, the statute excludes from the definition of "injury" only those mental injuries that result from good faith personnel action. *See Petition of Dunn*, 160 N.H. 613, 624 (2010).

Even if the majority is correct that the legislature did not intend to allow recovery for mental injuries such as the claimant's, "we must honor the expressed intent of the legislature as expressed in the statute itself." *Union Leader Corp. v. Fenniman*, 136 N.H. 624, 627 (1993). Moreover, I believe that because of our obligation to construe the Workers' Compensation Law liberally to give the broadest reasonable effect to its remedial purpose, *Appeal of Gamas*, 158 N.H. at 648, we must interpret the statutory exclusion at issue narrowly. *Cf. Hampton Police Assoc. v. Town of Hampton*, 162 N.H. 7, 11 (2011) (Because we resolve questions regarding the Right-to-Know law with a view to providing the utmost information to best effectuate the statutory and constitutional objective of facilitating access to all public documents, we construe provisions favoring disclosure broadly, while construing exemptions narrowly.). Thus, I would hold that the claimant's cumulative occupational stress and resulting depression, caused by the failure of his business, do not fall within the statutory exclusion from the definition of "injury."

The majority reasons that although business failure is not among the specifically enumerated exceptions to the word "injury," it constitutes "any similar action" because the possibility of business failure is a "normal condition of employment." I believe that this reasoning reads out of the exclusion the requirement that the injury be caused by an action of the employer taken in good faith against the employee. As we made clear in *Petition of Dunn*, 160 N.H. at 624, the statute "excludes from the definition of 'injury' stress-related disability resulting from good faith personnel *action*." It does not exclude stress-related disability resulting from "normal condition[s] of employment." It excludes only those stress-related injuries that result from disciplinary actions, work evaluations, job transfers, layoffs, demotions, terminations, or other similar personnel actions against an employee *"taken in good faith by an employer."* RSA 281-A:2, XI

(emphasis added). In this case, the CAB did not find that the claimant's occupational stress and depression were due to actions taken in good faith by the employer, and, particularly without a transcript, we cannot make such a finding in the first instance.

The majority asserts that the failure of a business "necessarily implies some action by the employer" because "a business has not 'failed' until the employer shuts [it] down." This assertion ignores the nature of the claimant's injury. Here, the claimant suffered from a cumulative stress injury, which began with the March 2007 fire, and ultimately resulted in depression. *See Petition of Dunn*, 160 N.H. at 622-24; *see also Appeal of N.H. Dep't of Health and Human Servs.*, 145 N.H. 211, 214 (2000) ("Disability caused by cumulative work-related stress is compensable under the Workers' Compensation Law."). Although the CAB used the phrase "business failure," in effect, it found that the claimant's cumulative occupational stress was caused by the fact that his business was *failing*, not by its ultimate *failure*.

The majority posits that to interpret the statutory exclusion not to apply to the claimant's cumulative occupational stress and depression caused by his failing business leads to an absurd result. I disagree. Just as the statute does not exclude from the definition of "injury" a mental injury suffered by an employee caused by the fact that the company for which he works is failing economically, it does not exclude a mental injury suffered by the owner of a business caused by the same set of circumstances. This is not to say that any such mental injury would necessarily meet all of the *other* statutory prerequisites for compensation under the Workers' Compensation Law, such as the requirement that the injury arise out of and in the course of employment. It is only to point out that the exclusion at issue does not apply to mental injuries caused by business failure.

HICKS, J., joins in the dissent.