# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

**In Case No. 2016-0543, <u>Appeal of Mr. Bult's, Inc.</u>, the court on October 16, 2017, issued the following order:**

Having considered the briefs and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioners, Mr. Bult's, Inc., Zurich Insurance Company, and The Lawson Group, appeal a decision of the Compensation Appeals Board (CAB) affirming the denial of recovery from the State Special Fund for Second Injuries (Second Injury Fund) for injuries to Richard Morrissette. We affirm.

The following facts were found by the CAB or are supported by the record. Morrissette, a truck driver, was hired by Mr. Bult's, Inc. on August 26, 2013. Before he was hired, as part of his commercial driver's license renewal process, Morrissette underwent a Department of Transportation physical examination. For the physical examination, Morrissette completed a medical questionnaire, upon which he indicated that he had diabetes that was controlled by "diet and pills." Morrissette's license was renewed, and Mr. Bult's, Inc. placed the information about Morrissette's diabetes in his personnel file.

On August 13, 2014, a gust of wind blew open the back doors of Morrissette's truck. Morrissette was thrown backwards. He suffered injuries to one shoulder, a cervical sprain, and headaches. Ultimately, he underwent rotator cuff surgery on his injured shoulder.

In connection with Morrissette's injuries, the petitioners requested reimbursement from the Second Injury Fund on September 1, 2015, which the New Hampshire Department of Labor (DOL) denied. The petitioners appealed the decision to the CAB, and the CAB held a hearing on the matter on July 20, 2016. The CAB thereafter denied the petitioners' request for recovery because it concluded that the petitioners had not met their burden of proving, by a preponderance of the evidence, that Morrissette had a "permanent physical impairment at the time of hire or that the Employer had knowledge of an impairment." Specifically, the CAB found that the petitioners had "not proven that an employer, if it learned of the controlled diabetes, would more likely than not significantly consider it in making a decision to hire or retain an employee." This appeal followed.

Our standard of review of decisions of the CAB is established by statute:

> [A]ll findings of the commission upon all questions of fact properly before it shall be deemed to be prima facie lawful and reasonable; and the order or decision appealed from shall not be set aside or vacated except for errors of law, unless the court is satisfied, by a clear preponderance of the evidence before it, that such order is unjust or unreasonable.

RSA 541:13 (2007). Accordingly, our review of the CAB's factual findings is deferential. Appeal of Hartford Ins. Co., 162 N.H. 91, 93 (2011). We review its interpretations of statutes, however, de novo. Id. "On questions of statutory interpretation, this court is the final arbiter of the intent of the legislature as expressed in the words of a statute considered as a whole." Id. (quotation omitted). "We interpret legislative intent from the statute as written and will not consider what the legislature might have said or add language that the legislature did not see fit to include." Id. (quotation omitted). We first examine the language of the statute itself, and, where possible, construe that language according to its plain and ordinary meaning. Appeal of Letellier, 163 N.H. 24, 27 (2011). "We construe liberally the Workers' Compensation Law in order to give the broadest reasonable effect to its remedial purpose." Appeal of Hartford Ins. Co., 162 N.H. at 93 (quotation omitted).

The petitioners raise several arguments on appeal. They contend that: (1) the CAB erred in applying the inquiry we set forth in Appeal of Hartford to determine whether a pre-existing permanent impairment is "of such seriousness as to constitute a hindrance or obstacle to obtaining employment" under RSA 281-A:2, XIV (2010); (2) the DOL "waived" the Appeal of Hartford inquiry, and, therefore, the CAB erred in requiring the petitioners to satisfy that inquiry; (3) the DOL, in contravention of RSA 281-A:2, XIV and RSA 281-A:54 (2010), erred by denying their reimbursement request on the sole basis that Morrissette's pre-existing permanent impairment is diabetes; (4) the CAB misinterpreted RSA 281-A:54 by requiring the petitioners to meet "a heightened burden of proof concerning 'employer knowledge' that would be considered illegal for an employer to obtain;" and (5) the CAB erred by disregarding uncontradicted expert testimony and by not relying upon medical evidence. (Bolding and capitalization omitted.)

We begin with a brief overview of the Second Injury Fund. "The second injury fund was created to encourage employers to hire or retain employees with permanent physical or mental impairments of any origin by reducing the employer's liability for workers' compensation claims." Id. (quotation omitted). The implementing statute provides, in relevant part:

> If an employee who has a permanent physical or mental impairment, as defined in RSA 281-A:2, XIV, from any cause or

origin incurs a subsequent disability by injury arising out of and in the course of such employee's employment on or after July 1, 1975, which results in compensation liability for a disability that is greater by reason of the combined effects of the preexisting impairment than that which would have resulted from the subsequent injury alone, the employer or the employer's insurance carrier shall in the first instance pay all awards of compensation provided by this chapter. However, the commissioner shall reimburse such employer or insurance carrier from the [Second Injury Fund] for all compensation payments subsequent to those payable for the first 104 weeks of disability.

RSA 281-A:54, I. A "[p]ermanent physical or mental impairment" is defined as "any permanent condition that is congenital or due to injury or disease and that is of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed." RSA 281-A:2, XIV (quotation omitted).

> In order to qualify under this section for reimbursement from the [Second Injury Fund], an employer shall establish by written records, or by affidavit executed at the time of hire or retention in employment, that the employer had knowledge of the employee's permanent physical or mental impairment at the time that the employee was hired or at the time that the employee was retained in employment after the employer acquired such knowledge.

RSA 281-A:54, III.

We first address the petitioners' argument that the CAB erred in applying the inquiry we set forth in Appeal of Hartford by using an analysis that we rejected in that case. In Appeal of Hartford, we considered "whether RSA 281-A:2, XIV allows the CAB to consider an employee's past job performance as evidence that his or her preexisting impairment would not be a hindrance or obstacle to obtaining employment should the employee become unemployed." Appeal of Hartford Ins. Co., 162 N.H. at 95. We concluded that "the employee's ability to perform his or her existing job, or one like it, is not determinative of whether the preexisting impairment is 'a hindrance or obstacle to obtaining employment.'" Id. at 96 (quoting RSA 281-A:2, XIV). Instead, we explained that "[t]he inquiry should be whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee." Id. at 97 (quotation omitted).

A review of the CAB's decision demonstrates that the CAB applied the inquiry we adopted in Appeal of Hartford. The CAB determined that "the [petitioners] ha[ve] not proven that an employer, if it learned of the controlled

3

diabetes, would more likely than not significantly consider it in making a decision to hire or retain an employee." This is precisely the analysis we prescribed in Appeal of Hartford. Thus, we conclude that the CAB did not err in its application of the analysis we outlined in Appeal of Hartford.

The petitioners also contend that the DOL "waived the [Appeal of Hartford] inquiry requirement," and, therefore, the CAB's "decision determining that the Carrier failed to meet the [Appeal of Hartford] inquiry is" erroneous. According to the petitioners, New Hampshire Administrative Rules, Lab 506.04(d) does not require a "Carrier to meet the [Appeal of Hartford] inquiry as there are no State Forms or Exhibits requiring a Carrier to satisfy the inquiry with its initial filings for reimbursement." Thus, the petitioners contend that, because the DOL has "had ample opportunity (over 5 years) to formulate new administrative rules to address the" Appeal of Hartford inquiry, but it has not done so, the DOL has "waived the [Appeal of Hartford] inquiry requirement" as a prerequisite to compensation from the Second Injury Fund. We disagree that Lab 506.04(d) does not require proof of the inquiry we outlined in Appeal of Hartford.

Lab 506.04 provides, in pertinent part, that "[s]elf-insured employers and insurance carriers who desire to invoke the reimbursement provisions of RSA 281-A:54 shall file proof of eligibility for the use of the second injury fund established by RSA 281-A:55." N.H. Admin. R., Lab 506.04(b). It states that "[p]roof of eligibility shall include," among other things,

> (1) Either notarized true copies of the written record of knowledge by the employer that the employee had a permanent impairment, prior to the work related injury which the employer is using as a basis for reimbursement by the fund . . . or an affidavit stating that the employer had knowledge of the employee's permanent physical or mental impairment which must be executed by the employer at the time of hire or retention but before the second injury may be used as written record;

> (2) Medical evidence of the preexisting permanent impairment[.]

N.H. Admin. R., Lab 506.04(d)(1), (2) (emphases added).

Although Lab 506.04(d) refers to both "permanent impairment" and "permanent physical or mental impairment," we think it implausible that the DOL meant for the phrase "permanent impairment" to refer to something other than "permanent physical or mental impairment," cf. Ruel v. N.H. Real Estate Appraiser Bd., 163 N.H. 34, 39 (2011) (stating that court will not presume legislature intended illogical result); Appeal of Town of Pittsfield, 160 N.H. 604, 606 (2010) (principles of statutory construction govern interpretation of

4

administrative regulations).  We, therefore, interpret both phrases as referencing the "[p]ermanent physical or mental impairment" defined in RSA 281-A:2, XIV and thereby required under RSA 281-A:54, I and III.  It is this language that we interpreted in Appeal of Hartford when we concluded that the "inquiry should be whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee."  Appeal of Hartford Ins. Co., 162 N.H. at 97 (quotation omitted).  Accordingly, by requiring proof that the employer knew of the employee's "permanent physical or mental impairment," N.H. Admin. R., Lab 506.04(d)(1), the DOL is, in effect, requiring proof to satisfy the Appeal of Hartford inquiry.

For the same reason, we reject the petitioners' argument that the DOL's "Second Injury Fund Sworn Statement of Employer" form does not require a party seeking compensation from the Special Injury Fund to submit information to satisfy the Appeal of Hartford inquiry.  (Capitalization omitted.)  As the petitioners note in their brief, the form "requires an employer to provide records, 'Pursuant to N.H. RSA 281-A:54, III and N.H. Admin. Rule Lab 506.04(d)(1).'"  Thus, contrary to the petitioner's contention, by requiring an employer to provide records pursuant to RSA 281-A:54, III and Lab 506.04(d)(1), the "Second Injury Fund Sworn Statement of Employer" form does require the employer "to produce evidence to support the [Appeal of Hartford] inquiry in the initial submissions."  (Capitalization omitted.)

The petitioners further cite an e-mail sent by the DOL's Special Funds Coordinator on August 26, 2016 — almost a year after the petitioners requested reimbursement — as evidence that the DOL does not require parties seeking reimbursement to submit evidence to satisfy the Appeal of Hartford inquiry.  In the e-mail, the Special Funds Coordinator lists what she refers to as "a couple more things to remember" regarding Second Injury Fund files and reimbursement requests.  The petitioners suggest that, because the e-mail notes that the case does not need to be outlined in the cover letter and that "physical therapy notes, occupational therapy notes or any other therapy notes" do not need to be included unless "it is a stress claim and [the party] is seeking mental health therapy," it is clear "that carriers/employers do not need to submit evidence to show the [Appeal of Hartford] inquiry."  We fail to see how these statements in the e-mail affirmatively demonstrate or even suggest that employers or insurance carriers need not submit evidence to satisfy the Appeal of Hartford inquiry, nor do we see anything that discourages employers from doing so.  See Petition of Warden (State v. Roberts), 168 N.H. 9, 18 (2015) ("We interpret written documents de novo.").

The petitioners also maintain that, contrary to RSA 281-A:2, XIV and RSA 281-A:54, the DOL automatically disqualified their reimbursement request on the sole basis that Morrissette's pre-existing permanent impairment is diabetes.  As we explained, to qualify for reimbursement under RSA 281-A:54,

the employer must establish that it "had knowledge of the employee's permanent physical or mental impairment." RSA 281-A:54, III. RSA 281-A:2, XIV requires that the employee's "[p]ermanent physical or mental impairment" be both: (1) a "permanent condition that is congenital or due to injury or disease"; and (2) "of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed." (Quotation omitted.) To determine whether an employee's preexisting impairment is a hindrance or obstacle to obtaining employment under RSA 281-A:2, XIV, the inquiry is "whether the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee," Appeal of Hartford Ins. Co., 162 N.H. at 97 (quotation omitted).

Here, the DOL concluded that the petitioners had "failed to establish that Mr. Morrissette had any permanent physical or mental impairment, as defined in RSA 281-A:2, XIV, at the time of his subsequent disability." It stated that although Morrissette was diagnosed with diabetes, "[d]iabetes in and of itself is not a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed." In doing so, it appears that the DOL either implicitly determined or assumed, without deciding, that Morrissette's diabetes constituted a "permanent condition that is congenital or due to injury or disease," RSA 281-A:2, XIV, but that the petitioners had failed to demonstrate that Morrissette's diabetes was "of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed," id. (emphasis added). Thus, the DOL did not automatically disqualify the petitioners from reimbursement under the Special Injury Fund simply because Morrissette has diabetes. Rather, the DOL recognized the statutory requirements for reimbursement, but found that the petitioners had failed to meet those requirements.

The petitioners next contend: (1) that the CAB committed an error of law in requiring the petitioners to prove that Mr. Bult's, Inc. had knowledge of the seriousness of Morrissette's condition, thus "establish[ing] a heightened burden of proof"; and (2) that requiring an employer to demonstrate that it knew the seriousness of an employee's preexisting impairment "would place all employers [at risk] of potentially violating the [Americans with Disabilities Act]." (Bolding and capitalization omitted.)

RSA 281-A:54, III provides that employers seeking reimbursement from the Second Injury Fund "shall establish . . . that the employer had knowledge of the employee's permanent physical or mental impairment" at the relevant time. As we explained, the statutory definition of "[p]ermanent physical or mental impairment" has two parts. RSA 281-A:2, XIV (quotation omitted). Thus, by its plain and ordinary meaning, RSA 281-A:54, III requires the employer to establish that it had knowledge of both parts: (1) that the employee

6

had a "permanent condition that is congenital or due to injury or disease"; and (2) that the condition "is of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed." RSA 281-A:2, XIV; RSA 281-A:54, III; see 8 A. Larson et al, Larson's Workers' Compensation Law, § 91.03[3], at 91-42 (Matthew Bender ed. rev. 2016) ("The knowledge that the employer must have of the nature of the injury also [is] held to include awareness that the condition was of a kind likely to be a hindrance to employment."). Therefore, contrary to the petitioners' assertion, the CAB did not impose a heightened burden of proof upon the employer; the CAB simply concluded that the employer had not met the burden of proof established by the statute.

In support of their argument that requiring employers to demonstrate knowledge of the seriousness of an employee's impairment violates the Americans with Disabilities Act, the petitioners quote 29 C.F.R. § 1630.13(b) (2016), which provides: "Except as permitted by § 1630.14, it is unlawful for a covered [employer] to require a medical examination of an employee or to make inquiries as to whether an employee is an individual with a disability or as to the nature or severity of such disability." However, "[p]reemployment inquiries contained in an employer's application form . . . do not automatically violate the [Americans with Disabilities Act]." Caldwell v. Aarlin/Holcombe Armature, 481 S.E.2d 196, 198 (Ga. 1997); see 42 U.S.C. § 12112(d)(2)(B) (2012). The petitioners have not persuaded us that employers cannot satisfy the knowledge requirement of RSA 281-A:54, III without running afoul of the Americans with Disabilities Act.

We turn next to the petitioners' contention that the CAB erred by disregarding uncontradicted expert evidence. At the hearing, the petitioners presented the testimony of a vocational counselor. The counselor testified that, after contacting fifteen employers in the trucking industry and three recruiters, it was her opinion that an employer would possibly consider diabetes in deciding between two otherwise similar candidates. In the petitioners' view, the fact that the DOL presented no evidence contradicting the counselor's testimony compelled the CAB to resolve the appeal in their favor. They contend that in Second Injury Fund reimbursement claims, just as when a worker seeks to establish a claim for workers' compensation benefits, "[o]nce the [party seeking reimbursement] has established a prima facie case, the burden of production shifts to the respondent." See Appeal of Newcomb, 141 N.H. 664, 667 (1997).

We need not decide if the burden-shifting framework of workers' compensation claims applies to Second Injury Fund reimbursement claims. Assuming that it does, "[t]he burden of persuasion . . . remains with the [party seeking reimbursement]," id. (quotation omitted), and the CAB was not persuaded by the counselor's opinions about whether employers significantly consider diabetes when making a decision to hire or retain an employee. The

7

CAB gave "little weight" to the counselor's testimony because her opinions, "based upon limited questioning of recruiters and employers[,] did not require any expertise nor did the responses prove persuasive."

The CAB is not bound to accept any uncontradicted evidence, even expert testimony, Appeal of Lambrou, 136 N.H. 18, 20 (1992), unless "the complexity of the . . . issues involved, the unequivocal nature of the testimony, and the absence of any articulated reason to discount it" compel its acceptance, Town of Hudson v. Wynott, 128 N.H. 478, 486 (1986). If the CAB "declines to accept uncontroverted evidence, it must state its reasons for doing so." Appeal of Lambrou, 136 N.H. at 20. Here, the CAB stated its reasons for "giv[ing] little weight" to the counselor's testimony. On appeal, the petitioners have not demonstrated that the CAB was compelled to accept the counselor's testimony. See Town of Hudson, 128 N.H. at 486. Therefore, we conclude that the CAB did not err in according little weight to the counselor's testimony.

Nonetheless, even had the CAB accepted the vocational counselor's testimony, the petitioners proved, at most, that an employer possibly would consider diabetes. Their burden, however, was to prove that "the impairment is such that an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee." Appeal of Hartford Ins. Co., 162 N.H. at 97 (quotation omitted; emphasis added). Proof that an employer possibly would do so does not prove that the employer more likely than not would do so.

The petitioners further contend that the CAB was required to rely upon medical evidence to determine whether or not Morrissette's diabetes was "of such seriousness as to constitute a hindrance or obstacle to obtaining employment" under RSA 281-A:2, XIV. The petitioners presented the written opinion of a doctor that Morrissette's "pre-existing permanent impairment [is] . . . diabetes," but the CAB concluded that the doctor's opinion did not establish that Morrissette's diabetes was "of such seriousness as to constitute a hindrance or obstacle to obtaining employment," RSA 281-A:2, XIV, because the "'seriousness' of the condition under the statute is a legal not medical question." The petitioners suggest that, because they presented the only medical evidence before the CAB, the CAB was compelled to find in their favor. They maintain that, instead, the CAB relied upon "'common knowledge' of the manifestations of diabetes" and that this was error.

Even assuming, without deciding, that, as the petitioners suggest, the CAB was required to treat the "seriousness" of Morrissette's condition as a medical question and not a legal question, we still find no error in the CAB's decision to deny them reimbursement under the statute. As we have explained, to obtain reimbursement under the Second Injury Fund, the petitioners had to do more than prove the "seriousness" of Morrissette's condition. They had to demonstrate that Morrissette's condition "is of such

seriousness as to constitute <u>a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed</u>." RSA 281-A:2, XIV (emphasis added). This means that the petitioners had to prove that the "impairment is such that <u>an employer who knew of it and its extent would more likely than not significantly consider it when making a decision to hire or retain the employee</u>." <u>Appeal of Hartford Ins. Co.</u>, 162 N.H. at 97 (quotation omitted; emphasis added). Here, the CAB found that the petitioners failed to show "that an employer, if it learned of the controlled diabetes, would more likely than not significantly consider it in making a decision to hire or retain an employee." The petitioners have not shown on appeal why this determination was error.

Nonetheless, the petitioners maintain that Lab 506.04 and the forms that the DOL requires those seeking reimbursement from the Second Injury Fund to submit require only medical evidence, and they therefore argue that the submission of medical evidence alone was sufficient for the petitioners to meet their burden. For the same reasons that we explained Lab 506.04 does not waive the <u>Appeal of Hartford</u> inquiry, we disagree that Lab 506.04 and the DOL's forms require a party seeking reimbursement from the Special Injury Fund to submit <u>only</u> medical evidence.

Finally, to the extent that the petitioners argue that the CAB erred by relying upon "common knowledge" in its decision, we find no reversible error. In its decision, the CAB noted that:

[D]iabetes is a disease which manifests itself in a wide variety of ways and severity. It ranges from a condition easily controlled by diet or exercise, through control by diet, exercise and medication to the more extreme manifestations concerning "strokes, retinopathy or limb amputations or other serious consequences." This information is common knowledge. As a result of this determination by the Panel, the Employer/Insurer is found not to have proven by a preponderance of the evidence that Mr. Morrissette had a permanent physical impairment at the time of hire or that the Employer had knowledge of an impairment. Because diabetes is so common and of such wide ranging severity, the Employer would need more information to determine it to be a serious permanent condition [a]ffecting employability.

We read this portion of the CAB's decision as explaining that, although Morrissette has the disease of diabetes, it does not necessarily follow that the employer had knowledge that his diabetes was "of such seriousness as to constitute a hindrance or obstacle to obtaining employment or to obtaining employment if the employee should become unemployed" as required by RSA 281-A:2, XIV. As the Second Injury Fund articulates in its brief, the mere knowledge of an employee's controlled diabetes "is not equivalent to knowledge

9

of a permanent impairment." <u>See</u> RSA 281-A:2, XIV, :54, III.  We agree.  Thus, to the extent that the CAB erred by taking note of the specific manifestations of diabetes in the absence of expert testimony, that error was harmless.  <u>See</u> <u>McIntire v. Lee</u>, 149 N.H. 160, 167 (2003) ("An error is considered harmless if it is trivial, or formal, or merely academic, and was not prejudicial to the substantial rights of the party asserting it.").

Accordingly, we conclude that the CAB's decision that the petitioners failed to prove that Mr. Bult's, Inc. had knowledge of Morrissette's permanent physical impairment as required by RSA 281-A:54, III is not unjust or unreasonable.  <u>See</u> RSA 541:13.

<u>Affirmed</u>.

DALIANIS, C.J., and HICKS, LYNN, and BASSETT, JJ., concurred.

**Eileen Fox,**
**Clerk**
